BAYARD STOCKTON et al., trustees, &c.,

*v.*

EDWARD J. DILLON et al.

[Filed March 2d, 1904.]

1. Mortgagors in two mortgages which had been foreclosed, being
desirous of staying a sale, secured from petitioners an advancement
sufficient to satisfy the interest and costs, and procure an assignment
of the second mortgage; and the mortgagors made a lease to petitioners
of the mortgaged premises at a specified monthly rental, the total rental
being equal to the sum advanced, and the second mortgage was also
assigned to petitioners. On an issue as to whether the lease amounted
to a mortgage, the second mortgage being additional security, or whether
there was an actual renting, with the lease secured by the second mort-
gage, it appeared that no interest on the money advanced had ever been
demanded or paid, and while at one time petitioners' office had made up
a statement as to the amount due under the second mortgage, showing
a credit each month of the same amount as the rentals stipulated in the
lease, it appeared that the person who made up the statement had no
knowledge of the actual character of the transaction involved.—*Held,*
that the lease was not in effect a mortgage, and hence the mortgagors
could not redeem the lease.

2. While the mortgagors were entitled to pay off the decree directing
sale of the premises, they could not hold it alive as a menace to the
leasehold interest of petitioners.

---

On bill to foreclose.

*Mr. Scott Scammell,* for the complainants.

*Mr. Edward C. Long* and *Mr. Linton Satterthwait,* for ·the ·defendant, the Bergner & Engle Brewing Company.

REED, V. C.

There were two mortgages upon the property of Dillon and Donnelly; the first was held by the complainants and the second by Mary Ann Connor. On May 28th, 1900, a bill was filed to foreclose the first of these mortgages, and on August 1st a final decree was made directing a sale of the premises, and that out of the proceeds there should be paid to the complainant $1,627.23, and then to Mary Ann Connor, the holder of the second mortgage, $1,381.66.

On June 30th, 1903, the Bergner & Engle Brewing Company filed a petition setting up the filing of the bill by the complainants and final decree entered in the suit on August 1st, 1900, as already set out. The petition set up that after the making of the said decree Dillon and Donnelly solicited the brewing company to advance them sufficient money to stay the sale of the said property under said decree; that thereafter it was agreed between the brewing company, through its agent, William H. Riegel, and Dillon and Donnelly, that the company would advance $1,381.66 (the true sum being $1,400) to Dillon and Donnelly; that said sum would be sufficient to satisfy the amount of accrued interest and costs on said decree, and would satisfy the said Mary Ann Connor the amount due to her, and would procure from her an assignment of her mortgage on said premises, and that in consideration of the advancement of the said sum Dillon and Donnelly would give the petitioners a lease ·on said premises for four years and eight months from the 1st day of October, 1900, the rent to be paid in advance; that in accordance with said agreement, entered into with the knowledge of the complainants in the foreclosure suit, the petitioners did advance the said sum to Dillon and Donnelly, who made a lease to Riegel, the agent of the brewing company, for four

years and eight months, and also procured an assignment of the Connor mortgage to the company as a guarantee that the brewing company would not be disturbed in its possession of the leased premises by reason of anything in complainants' mortgage. The petition then set out that on May 14th, 1903, the complainants made an affidavit of the amount due upon the decree and that execution was issued, under which the property was advertised for sale; that the petitioners have tendered the full amount of the decree to the complainants, requesting them to assign the decree, which the complainants refused to do.

The petition prayed that the petitioners might be made a party to the foreclosure suit and be permitted to file an answer or cross-bill. The rule upon all the parties in the foreclosure suit, including Dillon and Donnelly, was allowed, and upon its return an order was made admitting the petitioners as a party and permitting it to file an answer or cross-bill.

In its cross-bill the brewing company set out the same facts as appeared in its petition, and asked to be permitted to redeem the mortgage of the complainants upon paying the amount due upon the decree, with accrued interest and costs, and in a supplemental cross-bill and affidavits asked that the sheriff be enjoined from selling the property under the said decree. An interlocutory injunction was directed.

The brewing company deposited in this court the amount of the decree, and the money was taken out by the complainants on July 28th, 1903.

Dillon and Donnelly filed an answer to the cross-bill. In the answer they admitted that the sum of $1,400 was advanced by the brewing company for the purposes set out in the cross-bill, and that a lease was given, and that the Connor mortgage was assigned. But it denies that there was any understanding that the foreclosure proceedings should be indefinitely postponed.

The answer asserts that a payment of the $1,400 was made as a loan, with the security of the said lease, and that it was agreed that in case Dillon and Donnelly should pay the said loan, without interest, that then the brewing company should deliver up

all obligations held by it for the security of the loan. It asserts, also, that the Connor mortgage was an additional security for the said loan. It sets up a tender to the brewing company of the amount due upon the said loan, and the refusal of the company to deliver up the lease and mortgage. It also sets up that they are ready and willing to pay the amount of complainants' decree, as well as the amount due to the brewing company. Upon this cross-bill and answer, the case was set down for final hearing.

Upon the hearing it appeared that the brewing company advanced the $1,400, out of which $242.49 was paid upon the Connor mortgage and $219.79 was paid as the costs, with accrued interest upon the complainants' decree, upon payment of which complainants consented to stay the sale of the premises. And it also appeared that the lease for four years and eight months, the term beginning October 1st, 1900, at the yearly rent of $300, to be paid in equal monthly payments of $25 each, was made. Attached to this lease was a receipt given by Dillon and Donnelly to Mr. Riegel, the agent of the brewing company, for the sum of $1,400, expressed to be in full for rent of said premises herein described for the term of four years and eight months. This receipt is dated "Trenton, October 1st, 1900."

On October 7th, 1900, the brewing company took an assignment of the Connor mortgage.

It is perceived that the effort by Dillon and Donnelly is practically to redeem the lease and the decree from the control of the brewing company. The pleadings are not exactly conformable to practice, as the effort should have been made by cross-bill and not by answer. But the object of the parties is clear and the pleadings can be amended if it is found necessary to reach the result aimed at, namely, to determine the character of the lease. It is manifest that Dillon and Donnelly, as mortgagors, have the right to pay off the mortgage decree against them whenever they choose to do so. This, however, does not seem to be their purpose, so far as that purpose is disclosed in their answer, unless they can, at the same time, redeem the lease.

I will therefore consider their right to redeem.

It is perceived that the lease was given for a term which, at the rental named, viz., $25 a month, would amount to exactly the amount of money advanced. As already observed, the brewing company insists that the $1,400 was understood to be advanced as payment of rent in full for the term. It insists that while the money was advanced for the benefit of Dillon and Donnelly, it was not advanced as a loan, but was payment of a consideration for the term, just as the company might have bought any other property of Dillon and Donnelly and paid them the cash for the purpose of aiding them financially. As already observed, the assignment of the Connor mortgage to the brewing company is said by it to. have been as security that the company would have the enjoyment of the full term of the lease, and, as said by Dillon and Donnelly, that it was as security, in addition to the lease, for the repayment of the same loan.

There is nothing in the case or upon the face of the papers to show that the lease is a mortgage, unless a statement made up on January 5th, 1903, by someone in the office of the brewing company, can be so regarded. This statement was made up at the request of the solicitor of the complainants, for the purpose of ascertaining how much was due upon the Connor mortgage. This statement, after fixing the amount due upon the mortgage on August 7th, 1900, allowed a cash credit each month, from July 6th, 1901, to January 5th, 1903, of $25, amounting to $475. This credit was obviously for rent under this lease.

But it is clear that the person who made up this statement did not understand the character of the transaction by which the mortgage had come into the possession of the brewing company. According to the testimony of neither party were the rents to be applied on the mortgage. By the insistence of Dillon and Donnelly, the assignment was made to secure the payment of the $1,400 loan. Now, of the $1,400, $1,200 was paid when the lease was made, and $200 was paid by Connor, the sub-lessee from the brewing company—he paid the rent for

eight months to Dillon and Donnelly, or for their benefit, in paying for repairs upon the premises. This eight months began October 1st, 1900, and ended June 1st, 1901. So that, in view of the situation taken by Dillon and Donnelly, only $1,200 was due to the brewing company on June 1st, and by the application of the rents from June 1st, 1901, to January 5th, 1903 (nineteen months), amounting to $475, there was left of $1,200 on the last date, $725 due.

The only inference that can be drawn from the statement is that the company understood that it owned the Connor mortgage absolutely, and that the lease was to be used as collateral security for the payment of that mortgage. This inference, as already observed, is opposed to the position taken by both parties, and the statement based upon it was made by someone who was ignorant of the situation.

In my judgment, the lease is what it purports to be—a grant of a term for years with a fixed rental paid in advance. The length of the term at the rent fixed seems to be a fair rent. The same sum was paid by the sub-lessee, and makes up exactly the sum advanced. No interest upon the $1,200 or the $1,400 was ever paid or demanded, and it is quite clear that no payment of interest was ever in the minds of the parties. Now, one of the tests of whether what appears to be an absolute transfer or conveyance was in fact a mortgage is whether a debt remains due from the grantor to the grantee. If interest was paid or was to be paid, the presumption would be that there was a debt upon which interest could accrue. It is inconceivable that an interest-bearing debt was understood to exist, after the execution of this lease.

Another test is whether the value of the thing granted is greatly in excess of the sum advanced or paid. In this case it is of the exact value of the sum paid.

Again, if the lease was a mortgage, when was the debt due for which it was given? It is quite clear that the brewing company could not demand the payment of the $1,400, or any part thereof, after the lease was made, as no sum remained payable, either upon demand or at any particular period. Now, the right

to redeem is the inseparable instance of every mortgage, but the right to redeem cannot be asserted until the mortgage debt can be demanded by the mortgagee. *Jones Mort.* §§ *1038, 1052.*

I am, for these reasons, constrained to the conclusion that Dillon and Donnelly are not in a position to redeem the lease and the Ann Connor mortgage.

The right of the brewing company to redeem the mortgage from the complainants is clear.

As already remarked, Dillon and Donnelly can pay off the decree now held by the brewing company, but they cannot hold it alive as a menace to the leasehold estate held by the brewing company in the mortgaged premises.